IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HEDRA ESHAK FOUAD FAHMI, )
)
Petitioner, )
)
v. )                NO. 3:26-cv-00856
)
TODD BLANCHE, *Acting Attorney* )        JUDGE RICHARDSON
*General of the United States,* et al., )
)
Respondents. )

## <u>ORDER</u>

Pending before the Court is the "Petition for a Writ of Habeas Corpus (Doc. No. 1, "Petition") filed pursuant to 28 U.S.C. § 2241 by Petitioner, Hedra Eshak Fouad Fahmi. As appears to be undisputed, Petitioner was arrested by ICE Nashville on June 24, 2026, and transported to the West Tennessee Detention Facility, in Mason, Tennessee. (*See* Doc. No. 17 at 2). That same day (i.e., June 24, 2026) Petitioner filed the Petition seeking (among other things)[1] "his immediate release from immigration custody." (Doc. No. 1 at 9). As grounds for his release, Petitioner asserts that his detention violates the Due Process Clause of the Fifth Amendment and exceeds the detention authority conferred by the Immigration and Nationality Act because he is being detained without any meaningful opportunity to obtain an individualized custody determination before a neutral decision-maker. (*Id.* at 6, 9).

On June 26, 2026, the Court issued an order (Doc. No. 6) whereby the Court ordered Respondents to "file an answer, motion, or other response to the Petition[.]" (*Id.* at 4). On July 13,

---

[1] As for the other requests for relief made in the Petition, in the Court's view those requests will be mooted via the instant order (and accompanying judgment) if they have not already been mooted, so the Court does not discuss them herein.

2026, Respondents filed a "Response to [Petitioner's] Petition for Writ of Habeas Corpus," (Doc. No. 17, "Response"), whereafter Petitioner filed a reply (Doc. No. 20, "Reply"), as directed by the Court's July 14, 2026 order (Doc. No. 19).

In their Response, Respondents provide two arguments for denying the Petition: (1) "service ha[d] not been perfected pursuant to Fed. R. Civ. P. 4," and (2) that although "Petitioner is entitled to file a Motion for custody redetermination with the immigration court," Petitioner had not done so. (Doc. No. 17 at 1-2). The Court will address each argument in turn.

First, as it relates to service of process, on July 16, 2026, Petitioner filed a "Certificate of Service" (Doc. No. 21)—which included "USPS Certified Mail Receipts" (*id.* at 4-8)—and on July 29, 2026, Petitioner filed a notice (Doc. No. 23, "July 29 Notice") whereby Petitioner informed the Court that "[o]n July 20, 2026, Petitioner served the . . . Respondents by USPS Certified Mail with *delivery confirmation*,"[2] (*id.* at 1 (emphasis added)). Accordingly, the Court finds that Respondents' argument that "service ha[d] not been perfected pursuant to Fed. R. Civ. P. 4," has become inapplicable. (Doc. No. 17 at 1).

Regarding Respondents' second argument—that Petitioner had not yet filed a motion for custody redetermination with the immigration court—the Court finds this argument likewise is no longer applicable. Via the July 29 Notice, Petitioner informed the Court that he had "submitted a custody redetermination request to the Immigration Court," but that on "July 27, 2026, the Immigration Judge denied that request for lack of jurisdiction," (Doc. No. 23 at 1-2), meaning that Petitioner has yet to receive a substantive custody redetermination hearing. Notably, in their Response, Respondents concede that the Sixth Circuit's ruling in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) controls, meaning that "Petitioner is [properly deemed] detained under

---

[2] Notably, Exhibit A (Doc. No. 23 at 4-6) to the July 29 Notice included USPS Tracking Confirmations, which confirm delivery.

§ 1226(a)." (Doc. No. 17 at 2). In *Raycraft*, the Sixth Circuit affirmed multiple district courts' holdings that detentions without bond hearings under 8 U.S.C. § 1225(b)(2)(A) were unlawful and violated due process. 175 F.4th at 732, 734. The court reasoned that 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention scheme, which does not provide for individualized bond hearings, does not apply to people who are not seeking admission or lawful entry into the United States, because they are already in the United States. *See id.* at 732. The court clarified that, instead, "§ 1226 applies to aliens already present in the United States." *Id.* (internal citation and quotation omitted). The court also concluded that detention without a bond hearing in those circumstances (i.e., where an alien is subject actually to § 1226(a) rather than 8 U.S.C. § 1225(b)(2)(A)) constitutes a deprivation of liberty in violation of the Due Process Clause. See *id.* at 734.

Petitioner was already residing in the United States when he was taken into ICE custody. (Doc. No. 1 at ¶ 13).[3] Accordingly, and consistent with *Raycraft* (not to mention the great majority of district courts, albeit not the great majority of courts of appeals, that have ruled on this issue), the Court finds that Petitioner's detention without a bond hearing is unlawful and constitutes a deprivation of liberty without due process of law, in violation of the Fifth Amendment. Of the (many) courts finding likewise, some have *conditionally* granted the writ, i.e., have ordered the petitioner's immediately release if, after a specific (small) number of days, the petitioner is not granted a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge. *See, e.g.*, *Magdaleno v. Raycraft*, No. 1:25-CV-1706, 2025 WL 3637413, at *9 (W.D. Mich. Dec. 16, 2025) ("The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment or, in the

---

[3] Because Respondents conceded that "Petitioner is detained under § 1226(a)," (Doc. No. 17 at 2), the Court considers the allegation that Petitioner was already residing in the United States when he was taken into ICE custody as conceded by Respondents and treats it as true.

alternative, immediately release Petitioner from custody."). But others have ordered the petitioner's immediate release. *See Yao v. Almodovar,* 813 F.Supp.3d 461, 477 (S.D.N.Y. 2025) (collecting cases). The Court here opts for the latter approach, finding—while acknowledging that the issue is debatable—that because Petitioner's rights to a bond hearing under § 1226(a) have been denied, "[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and that although Petitioner's] release today cannot cure his loss of liberty since [the day he was detained], this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." *Id.*[4]

That leaves just one final issue: the time by which Respondents must—absent some conceivable stay of the instant order—comply with this order's directive to release Petitioner. On this issue, the Court perceives that it has substantial discretion, and that discretion is influenced by multiple facts: (i) this order is being entered in the evening of July 29, 2026; (ii) Petitioner did not do what it needed to do to obtain the relief directed by this order until today; and (iii) as explained above, the Court's order *otherwise* is aggressive in dictating Petitioner's prompt release (as opposed to continued detention pending a bond hearing). Under these circumstances, the Court in its discretion is inclined to, and will, order that Petitioner's release occur by 5:00 p.m. Central Time on Friday, July 31, 2026.

---

[4] The Court notes that this conclusion is further supported by the particular circumstances in this present case. Notably, Petitioner has already submitted a custody redetermination request to the Louisiana Immigration Court, which was denied for lack of jurisdiction. At this point, the Court finds that Petitioner has adequately pursued a custody redetermination hearing and that if Petitioner were again to request such a hearing, the same obstacles that prevented any substantive bond hearing the first time around would likely present again, with the result that such hearing would (at the very least) be unduly delayed *unless* the Court were to *order* the Louisiana Immigration Court to hold a bond hearing within a particular short period of time. And the Court declines to arrogate to himself the power to tell a Louisiana Immigration Judge to afford Petitioner a bond hearing within X number of days. For this reason, the Court lacks confidence that a bond hearing would occur within a reasonable period and thus chooses to forgo conditioning Petitioner's release on Petitioner not having a bond hearing promptly (i.e., within X number of days).

<u>**CONCLUSION**</u>

For the reasons stated herein, the Court **GRANTS** the Petition to the extent that it requests the immediate release of Petitioner. Respondent **SHALL** immediately release Petitioner from custody, in no case later than 5:00 p.m. Central Time on Friday, July 31, 2026, with all possessions, property, and documents Petitioner had at the time he was taken into custody.

The Court will (separately) enter a judgment granting the writ unconditionally, subject to the timing parameters of such relief specified above.

The Clerk is directed, once such judgment is filed, to enter judgment for purposes of Rule 58 and close the file.

IT IS SO ORDERED.

*Eli Richardson*

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE